THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, a domestic business corporation,<br><br>Plaintiff/Interpleader,<br><br>v.<br><br>JENNIFER GLEDHILL, an individual; N.J., a minor; Ai.J., a minor; An.J., a minor,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER DENYING [18] PLAINTFF'S MOTION FOR APPOINTMENT OF GUARDIAN AD LITEM AND DEPOSIT OF DEATH BENEFITS**<br><br>Case No. 2:25-cv-00200-DBB-DAO<br><br>District Judge David Barlow |

Before the court is Plaintiff Prudential Insurance Company of America's ("Prudential") Motion for Appointment of Guardian Ad Litem and Deposit of Death Benefits.[1]

## BACKGROUND

Prudential filed an interpleader Complaint on March 14, 2025, in which it alleges the following.[2] Prudential is an insurance company that provides Servicemembers Group Life Insurance (SGLI) policies to the Department of Veteran Affairs.[3] Matthew Johnson was insured under a Prudential SGLI policy in the amount of $500,000.[4] Mr. Johnson's wife, Jennifer Gledhill, was named as the primary beneficiary of the policy.[5] He also had three minor children

---

[1] Mot. for Appointment of Guardian Ad Litem and Deposit of Death Benefits ("Mot."), ECF No. 18, filed Aug. 8, 2025.
[2] Compl., ECF No. 1, filed Mar. 14, 2025.
[3] *Id.* ¶ 8.
[4] *Id.* ¶ 9.
[5] *Id.* ¶ 10.

1

with Ms. Gledhill.[6] Mr. Johnson died on September 20, 2024.[7] His wife, Ms. Gledhill, was subsequently charged with his murder and is currently incarcerated at Salt Lake Metropolitan Jail while she awaits the results of her pending criminal action in Utah state court.[8]

SGLI policies are governed by federal statute.[9] The relevant statute prohibits a person convicted of wrongfully killing the insured from receiving any proceeds from the policy.[10] If a primary beneficiary is thus disqualified, the proceeds pass as directed by the statute.[11] In this case, the $500,000 death benefits would pass to Mr. Johnson's minor children if Ms. Gledhill were convicted.[12] After Prudential filed this action, it served its Complaint on Ms. Gledhill, and her counsel filed an appearance on her behalf.[13] The minor defendants have not yet accepted service or appeared.[14]

## STANDARD

"Federal courts have jurisdiction to hear two forms of interpleader actions: statutory interpleader and rule interpleader."[15] Subject-matter jurisdiction in a statutory interpleader case arises from 28 U.S.C. § 1335 when (1) "[t]wo or more adverse claimants, of diverse citizenship," (2) "are claiming or may claim" property or money worth $500 or more, and (3) the plaintiff deposits the disputed funds or a bond with the court.[16] Rule interpleader under Rule 22 of the

---

[6] *Id.* ¶¶ 3–5.
[7] *Id.* ¶ 11.
[8] *Id.* ¶¶ 2, 12.
[9] *Id.* ¶ 14.
[10] *Id.*
[11] *Id.* ¶ 15.
[12] *Id.* ¶ 17.
[13] Mot. 2; *see also* Return of Service for Jennifer Gledhill, ECF No. 14, entered May 5, 2025.
[14] *See generally* docket.
[15] *Clausen as Tr. of Brett M. Partridge Tr. v. Protective Life Ins. Co.*, No. 2:22-CV-00757-TC-DAO, 2023 WL 4137370, at *2 (D. Utah June 22, 2023).
[16] 28 U.S.C.A. § 1335(a).

Federal Rules of Civil Procedure provides no special basis for subject-matter jurisdiction and allows "[p]ersons with claims that may expose a plaintiff to double or multiple liability" to be "joined as defendants and required to interplead."[17] "In an action in interpleader, the court must . . . determine whether a single, identifiable stake is present" and "whether there are two or more adverse claims to that stake, focusing on the substance of the legal claims asserted."[18]

## DISCUSSION

In this case, statutory interpleader does not apply because none of the adverse claimants are diverse.[19] However, there is jurisdiction for rule interpleader because the claim arises under a law of the United States with regard to the governing SGLI statute,[20] the amount in controversy exceeds $75,000, and Prudential and the Defendants are diverse.[21]

In its Complaint, Prudential asserts that interpleader is appropriate in this case because it cannot determine the proper party to receive the death benefit without "exposing itself to double or multiple liability on account of the potential competing claims made by or available to Defendants."[22] It then asks the court in its Motion to appoint a guardian ad litem for the minor defendants "for the purposes of accepting service of the Interpleader Complaint" and to represent their interests.[23] It also requests that the death benefit be deposited with the court and that "the guardian ad litem be compensated out of the deposited funds."[24]

---

[17] Fed. R. Civ. P. 22(a)(1).
[18] *In re Millennium Multiple Emp. Welfare Ben. Plan*, 772 F.3d 634, 642 (10th Cir. 2014).
[19] 28 U.S.C.A. § 1335(a); Compl. ¶¶ 2–5.
[20] 28 U.S.C.A. § 1331; Compl. ¶ 6.
[21] 28 U.S.C.A. § 1332(a); Compl. ¶¶ 1–5, 9.
[22] Compl. ¶ 18.
[23] Mot. 2.
[24] *Id.* at 5.

Interpleader actions generally proceed in two stages.[25] The court must first determine "whether the plaintiff 'has properly invoked interpleader, including whether the court has jurisdiction over the suit, whether the plaintiff is actually threatened with double or multiple liability, and whether any equitable concerns prevent the use of interpleader.'"[26] Assuming interpleader is proper, the court may permit the plaintiff to pay the disputed funds into the registry of the court and then discharge the plaintiff.[27] Once the plaintiff is discharged, the second stage involves determining "the relative rights of the parties to the funds at issue."[28]

Here, interpleader is not appropriate at this time. Interpleader is often proper in circumstances involving death benefits and possible disqualifications under slayer statutes.[29] However, certain aspects of this case weigh against permitting interpleader as the case currently stands.

First, there is no immediate threat of multiple liability. Courts usually determine whether multiple adverse claims to an interpled stake exist by "focusing on the substance of the legal claims asserted."[30] Prudential does not allege in its Complaint that any defendant has even requested the benefit, much less asserted a legal claim.[31] Any threat of double liability is purely hypothetical at this point and may never materialize if Ms. Gledhill is convicted before any party asserts a claim to the benefit.

---

[25] *United States v. High Tech. Prods., Inc*., 497 F.3d 637, 641 (6th Cir. 2007).
[26] *Metro. Life Ins. Co. v. Asbell*, No. 21-CV-00332-RAW, 2023 WL 1967299, at *3 (E.D. Okla. Feb. 13, 2023) (quoting *High Tech Prods*, 497 F.3d at 641).
[27] *Id.*
[28] *Id.*
[29] *See Aetna U.S. Healthcare v. Higgs*, 962 F. Supp. 1412, 1414 (D. Kan. 1997) (explaining that "the Tenth Circuit ha[s] demonstrated a clear preference for the interpleader process in cases" involving death benefits and slayer statutes); *Glass v. United States*, 506 F.2d 379, 383 (10th Cir. 1974) (noting that "interpleader action . . . is specifically designed" for cases like those involving a disputed benefit and a slayer statute).
[30] *In re Millennium Multiple Emp. Welfare Ben. Plan*, 772 F.3d 634, 642 (10th Cir. 2014).
[31] *See* Compl.

Second, no legal analysis is necessary or possible at this juncture. In other interpleader cases involving similar factual scenarios, courts have resolved disputes about whether or how slayer statutes apply.[32] But here, the statute is unambiguous. It states that any benefits "payable because of the death of an individual insured under Servicemembers' Group Life Insurance or Veterans' Group Life Insurance" must not be paid to:

> (i) A person who is convicted of intentionally and wrongfully killing the decedent or determined in a civil proceeding to have intentionally and wrongfully killed the decedent;
> (ii) A person who is convicted of assisting or aiding, or determined in a civil proceeding to have assisted or aided, a person described in paragraph (e)(2)(i) of this section; and
> (iii) A member of the family of a person described in paragraph (e)(2)(i) or (e)(2)(ii) of this section who is not related to the decedent by blood, legal adoption, or marriage.[33]

Any death benefits withheld under this section must instead pass, in order of priority:

> (A) To the next eligible beneficiary designated by the decedent . . .;
> (B) To the decedent's widow or widower;
> (C) To the decedent's child or children, in equal shares, and descendants of deceased children by representation;
> (D) To the decedent's parents, in equal shares, or to the survivor of them;
> (E) To the duly appointed executor or administrator of the decedent's estate;
> (F) To other next of kin of the decedent as determined by the insurer.[34]

Even if the court accepted interpleader and moved on to the second stage of analysis, it would have nothing to do except wait for the outcome of Ms. Gledhill's criminal case. If she is ultimately convicted, she will have no plausible claim to the funds.[35]

---

[32] *See, e.g.*, *Aetna U.S. Healthcare v. Higgs,* No. 96-2525-JWL, 1997 WL 614333, at *1–2 (D. Kan. Sept. 2, 1997) (weighing evidence that the beneficiary murdered the decedent as required under Kansas's common-law slayer rule); *Unum Life Ins. Co. of Am. v. Umdenstock*, 572 F. Supp. 3d 1119, 1123 (N.D. Okla. 2021) (considering the application of Oklahoma's slayer statute when the beneficiary was found "not guilty by reason of mental illness).
[33] 38 C.F.R. § 9.5(e)(1–2).
[34] 38 C.F.R. § 9.5(e)(4)(i).
[35] 38 C.F.R. § 9.5(e)(2)(i).

5

Third, the minor defendants have not yet accepted service or appeared.[36] Under Rule 17 of the Federal Rules of Civil Procedure, "[t]he court must appoint a guardian ad litem—or issue another appropriate order—to protect a minor . . . who is unrepresented in an action."[37] Prudential notes that the minor defendants are currently living with a foster couple named Christie and Jon Coltharp.[38] However, the court has no information before it at this time that would help it determine what the Coltharps' relationship is to the minors, whether the minors' interests are adequately represented, and whether other actions may be appropriate to best protect those interests.[39] These questions are especially concerning because any guardian ad litem fees would most likely be paid out of the death benefit.[40] The court is hesitant to diminish the death benefit through such fees when a guardian ad litem may not ultimately be necessary given that no defendant has made a claim on the benefit and that the potential conflict could be conclusively resolved by the outcome of Ms. Gledhill's criminal trial.

In sum, granting Plaintiff's motion at this time would result in needless consumption of time and money involving issues that are not yet ripe. Accordingly, for the reasons stated above, the court determines that interpleader is not appropriate at this time on these facts. If the situation changes, Plaintiff may file a renewed motion.

---

[36] *See generally* docket.
[37] Fed. R. Civ. P. 17(c)(2).
[38] Mot. 4; Foster Placement Verification Letters ("Foster Letters") 2–4, ECF No. 19-1, filed Aug. 8, 2025.
[39] *See Nylife Ins. Co. of Arizona v. Johnson*, No. CV 15-810-SDD-RLB, 2016 WL 5339674, at *2 (M.D. La. Sept. 22, 2016) (declining to appoint a guardian ad litem in an interpleader because the minor's interests were sufficiently represented by her legal guardian).
[40] Mot. 5; *see also Unum Life Ins. Co. of Am. v. Umdenstock*, 572 F. Supp. 3d 1119, 1122 (N.D. Okla. 2021) (noting that guardian ad litem fees would diminish the already small death benefit).

## ORDER

Plaintiff's [18] Motion for Appointment of Guardian Ad Litem and Deposit of Death Benefits is DENIED.

Signed October 6, 2025.

BY THE COURT

_____
David Barlow
United States District Judge